IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SHULTS & TAMM (Litigation Trustee), | ) ) ) | CIVIL NO. 12-702 SOM/BMK |
| Plaintiff, | ) ) | ORDER DENYING SUMMARY JUDGMENT |
| vs. | ) ) | |
| MICHAEL S. RULEY, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**ORDER DENYING SUMMARY JUDGMENT**

**I.      INTRODUCTION.**

          Plaintiff is a Litigation Trustee suing Michael Ruley,

a former Chief Executive Officer and a Director of Hawaiian

Telecom Communications, Inc., ("Hawaiian Telecom"), to recover

allegedly preferential and fraudulent transfers pursuant to the

Bankruptcy Code.  Ruley moves for summary judgment on all counts,

and the Trustee moves for summary judgment with respect to Counts

III and IV.  The court denies the motions.

**II.     STATEMENT OF FACTS.**

          Michael Ruley was the CEO of Hawaiian Telecom from

October 1, 2004, until he resigned in February 2008.  Second Am.

Compl. ¶¶ 13, 21.

          When Ruley began working for Hawaiian Telecom, he

entered into an employment agreement (the "Employment

Agreement"), which provided for various severance benefits if his

employment ended under certain conditions.  Id. ¶¶ 18-20.  For example, Ruley was eligible for "a lump-sum severance payment of $900,000."  Id.  ¶ 19.  In addition, Ruley was eligible for reimbursement for all expenses relating to moving from Hawaii (the "Moving Payments"), payment of up to a 6% real estate broker commission fee to facilitate the sale of Ruley's Hawaii residence (the "Relocation Payment"), and an additional payment to reimburse Ruley for moving away from Hawaii (the "Relocation Gross Up Payment").  Id. ¶ 20.  See also Ex. A, Employment Agreement, ECF No. 14-3.

On February 3, 2008, members of the Hawaiian Telecom Board informed Ruley that his employment would end effective the next day.  Ex. G, Ruley Dep. at 25, ECF No. 14-9.  Ruley says the Hawaiian Telecom Board gave him two options: "We can terminate you, [or] you can resign for good cause, the cause being they eliminated my position."  Id. at 28.  At this meeting, Hawaiian Telecom Board members allegedly assured Ruley that, either way, "his severance obligations under his employment contract would be honored."  Id. at 93.  According to Ruley, Hawaiian Telecom Board members handed him a severance agreement that reflected the terms outlined in his Employment Agreement, id. at 100, and encouraged his attorney to look it over.  Id. at 26.  Ruley resigned effective the next day.  Ex. 6, Resignation Email, ECF No. 14-17.

The particulars of Ruley's severance payments were finalized on February 22, 2008.  Ex. B, Mutual Release and Severance Agreement, ECF No. 14-4.  Ruley's severance payments included:

(1)   $1,117,272 [the "Severance Payment"];

(2)   Any bonus which has been declared or earned but not yet paid for fiscal year 2007;

(3)   $71,340 (with respect to Executive's annual COLA payment for 2007) [the "COLA Payment"];

(4)   Any business expenses incurred by the Executive in accordance with the Employer's policies not yet paid to the Executive;

(5)   The value of all accrued, unused vacation days based on Executive's service to the Employer which the parties agree is 320.33 hours [the "Vacation Payment"];

(6)   Any other amounts due to the Executive arising from the Executive's participation in, or benefits under, any employee benefit plans, programs or arrangements; plus

(7)   $20,000 (with respect to accrued but unused airfare between Honolulu and the United States mainland)[the "Airfare Payment"].

Id.  In addition, Ruley received the Moving Payment, the Relocation Payment, and the Relocation Gross Up Payment outlined in his Employment Agreement, as well as $4,500 in attorneys' fees (the "Attorneys' Fee Payment").  Second Am. Compl. ¶ 25.

3

That same day, Ruley and Hawaiian Telecom also entered into a consulting agreement. <u>See</u> Ex. C, Consulting Agreement, ECF No. 14-5. Under the consulting agreement, Ruley was to serve as a "Special Advisor to the Chairman" for six months and to receive a monthly consulting fee of $23,780 (the "Consulting Payments"). <u>Id.</u>

On or about March 10, 2008, Ruley also received a payment of $95,840 to reimburse him for his cost of living adjustment, airfare, and attorneys' fees (collectively, the "Special Payment"). Second Am. Compl. ¶ 32.

On December 1, 2008, Hawaiian Telecom filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Second Am. Compl. ¶ 7. Hawaiian Telecom's payments to Ruley were made between February 5, 2008, and June 16, 2009. <u>Id.</u> ¶¶ 31-38. Many of these payments were made by Cartus, a company retained by Hawaiian Telecom. Cartus then invoiced Hawaiian Telecom for advances paid to Ruley. <u>Id.</u> ¶ 35.

The Trustee's Complaint asserts four claims against Ruley. First, the Trustee seeks to avoid the Relocation Payment, the Severance Payment, the Vacation Payment, and the Special Payment pursuant to 11 U.S.C. § 547 (Count II). Second, the Trustee alleges that the Moving Payments, the Relocation Payment, the Relocation Gross Up Payment, the Severance Payment, the Vacation Payment, the Consulting Payments, and the Special

4

Payment are fraudulent transfers in violation of 11 U.S.C.

§§ 548(a)(1)(B)(i) and (ii)(IV) (Count III).  Third, the Trustee

seeks to avoid these payments as fraudulent transfers in

violation of 11 U.S.C. §§ 548(a)(1)(B)(i) and (ii)(I) (Count IV).

Finally, the Trustee makes a "catchall" argument that it is

entitled to recover the transfers it seeks to avoid (Count VII).

Ruley moves for summary judgment on all counts against

him.[1]  The Trustee moves for summary judgment on Counts III and

IV.

## III.        SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the pleadings,

the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of

summary judgment is to identify and dispose of factually

unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477

U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible

evidence may be considered in deciding a motion for summary

judgment."  <u>Miller v. Glenn Miller Prods., Inc.</u>, 454 F.3d 975,

988 (9th Cir. 2006).  Summary judgment must be granted against a

party that fails to demonstrate facts to establish what will be

---

[1] Counts I, V, and VI are asserted against parties
other than Ruley.

an essential element at trial.  See Celotex, 477 U.S. at 323.  A

moving party has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.

Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102

(9th Cir. 2000).  The burden initially falls on the moving party

to identify for the court "those portions of the materials on

file that it believes demonstrate the absence of any genuine

issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec.

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing

Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987.

"A fact is material if it could affect the outcome of the suit

under the governing substantive law."  Miller, 454 F.3d at 987.

      When the moving party fails to carry its initial burden

of production, "the nonmoving party has no obligation to produce

anything."  In such a case, the nonmoving party may defeat the

motion for summary judgment without producing anything.  Nissan

Fire, 210 F.3d at 1102-03.  On the other hand, when the moving

party meets its initial burden on a summary judgment motion, the

"burden then shifts to the nonmoving party to establish, beyond

the pleadings, that there is a genuine issue for trial."  Miller,

454 F.3d at 987.  This means that the nonmoving party "must do

more than simply show that there is some metaphysical doubt as to

the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The

nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

IV.      ANALYSIS.

A.   Count II

Count II seeks to avoid the Relocation Payment, the Severance Payment, the Vacation Payment, and the Special Payment (collectively, the "Alleged Preferential Payments") pursuant to 11 U.S.C. § 547(b).  Second Am. Compl. ¶¶ 62-70.

Under § 547(b), the Trustee may avoid "any transfer of an interest of the debtor in property" made

(1) to or for the benefit of a creditor;

7

(2) for or on account of an antecedent debt
owed by the debtor before such transfer was
made;
(3) made while the debtor was insolvent;
[and]
(4) made –
. . .
    (B) between ninety days and one year
before the date of the filing of the
petition, if such creditor at the time of
such transfer was an insider; . . . .

There are at least two genuine issues of material fact
that preclude summary judgment as to Count II.

First, the parties dispute whether Hawaiian Telecom was
insolvent at the relevant time of the Alleged Preferential
Payments.  The Trustee argues that Hawaiian Telecom was insolvent
as of December 31, 2007, and continued to be insolvent through
the petition date.  See Ex. 30, Ueno Expert Report.  By contrast,
Ruley argues that Hawaiian Telecom's Form 10-Qs demonstrate that
Hawaiian Telecom's assets were greater than its liabilities
during the relevant time period.  See Hawaiian Telecom's Form 10-
Q ending March 31, 2008 (showing assets of $1,414,974,000 and
liabilities of $1,264,644,000), ECF No. 14-19; Hawaiian Telecom's
Form 10-Q ending June 30, 2008 (showing assets of $1,376,294,000
and liabilities of $1,247,140,000), ECF No. 14-20; Hawaiian
Telecom's Form 10-Q ending September 30, 2008 (showing assets of
$1,352,591,000 and liabilities of $1,269,296,000), ECF No. 14-21.

Second, the parties dispute whether Ruley was an
insider.  There are two types of "insiders" in the bankruptcy

context.  As the B.A.P. explained in <u>Miller v. Brady (In re</u> <u>Enterprise Acquisition Partners, Inc.</u>), 319 B.R. 626, 631 (B.A.P. 9th Cir. 2004): "There are two distinct types of insiders, those entities specifically mentioned in the statute . . ., i.e., <u>per</u> <u>se</u> insiders, or those not listed in the statutory definition, but who have a sufficiently close relationship with the debtor that conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor."

A <u>per se</u> insider under the Bankruptcy Code includes individuals such as a director or officer of the debtor.  11 U.S.C. §§ 101(31)(B)(i)-(ii).  "When the transferee is a <u>per se</u> insider, the court does not need to examine the actual nature of the relationship.  The <u>per se</u> insider is considered to be close enough to the debtor to demand preferential treatment as a matter of law, regardless of whether the insider has any actual control over the actions of the debtor."  <u>Id.</u>

But while the Bankruptcy Code provides a list of statutorily defined <u>per se</u> insiders, § 101(31)'s use of the term "includes" indicates that the list is nonexclusive.  <u>See</u> 11 U.S.C. § 102(3) (indicating that the term "includes" is not exhaustive).  Thus, one who is not a <u>per se</u> insider may still qualify as an insider "based on a professional or business relationship with the debtor . . . where such relationship compels the conclusion that the individual or entity has a

9

relationship with the debtor close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties." <u>Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman)</u>, 126 B.R. 63, 69-70 (9th Cir. B.A.P. 1991). "The determination of insider status is a question of fact." <u>Id.</u> at 67.

Ruley argues that he was not a <u>per se</u> insider as of February 4, 2008. Motion at 9, ECF No. 14-1. By contrast, the Trustee argues that Ruley was a <u>per se</u> insider through February 7, 2008, because Ruley's resignation letter was not submitted to Hawaiian Telecom until February 8, 2008. Opp'n at 5, ECF No. 37. Although Ruley's resignation letter stated that his resignation was retroactive to February 4, 2008, ECF No. 14-6, the Trustee says:

> the evidence is clear that on February 4, 2008, Ruley had not yet resigned, nor had he been fired. On February 4th and until February 8th, Ruley remained the CEO of Debtors and was a member of their Boards. During that period, Ruley and Debtors were negotiating the terms of Ruley's Severance and Consulting Agreements, and upon the agreement on the terms, Ruley submitted his resignation. Thus, until his delivery of his resignation on February 8, 2008, Ruley remained a <u>per se</u> insider.

Opp'n at 20, ECF No. 37. Ruley does not dispute that the Debtors paid him the Vacation Payment on February 5, 2008. <u>See</u> Second Am. Compl. ¶ 31. Viewing the evidence in the light most favorable to the Trustee as the nonmoving party with respect to

Count II, the court concludes that, on the present record, Ruley does not establish that he is entitled to summary judgment as to when he ceased to be a _per se_ insider.  With regard to the Vacation Payment, a question of fact precludes summary judgment as to whether Ruley was a _per se_ insider who received preferential treatment.

The remainder of the Alleged Preferential Payments were paid on either March 10, 2008 (the Severance Payment and the Special Payment), or May 30, 2008 (the Relocation Payment).  Id. ¶¶ 32, 36.  Ruley again asserts that he was not an insider during the relevant time period because he was neither an officer nor a director of Hawaiian Telecom at the time the transfers were made.  Ruley Motion for Summary Judgment at 8, ECF No. 14-1.  But Ruley's arguments presume that the only relevant inquiry is whether he was a _per se_ insider.  The Trustee raises questions of fact as to whether Ruley had a sufficiently close relationship with Hawaiian Telecom after he resigned as CEO to qualify as a nonstatutory insider.  Most significantly, Ruley acted as a consultant to Hawaiian Telecom for six months after he resigned, from March 1, 2008, through August 1, 2008.  The Trustee also suggests that Ruley was a limited partner in Hawaiian Telecom at least through February 22, 2008.  See Mutual Release and Severance Agreement, ECF No. 12-19 (describing Ruley as being in a Hawaiian Telecom "limited partnership").  Given questions of

fact concerning the remainder of the Alleged Preferential Payments, the court denies Ruley's motion for summary judgment as to Count II.

### B.    Count III

Count III seeks to avoid the Moving Payments, the Relocation Payment, the Relocation Gross Up Payment, the Severance Payment, the Vacation Payment, the Consulting Payments, and the Special Payment (collectively, the "Alleged Fraudulent Transfers") pursuant to 11 U.S.C. §§ 548(a)(1)(B)(i) and (ii)(IV).  Both Ruley and the Trustee move for summary judgment as to Count III.

Section 548(a)(1)(B) provides for the avoidance of constructively fraudulent transfers and obligations.  The Bankruptcy Code states:

> (a)(1)    The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> . . .
>
> (B)(i)    received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> . . .

```
         (ii)
    . . .
                   (IV) made such transfer to or for the
                        benefit of an insider, or incurred
                        such obligation to or for the
                        benefit of an insider, under an
                        employment contract and not in the
                        ordinary course of business.
```

11 U.S.C. § 548(a)(1)(B).

There are several questions of fact that preclude summary judgment as to Count III.  First, there is a genuine issue of material fact as to whether Hawaiian Telecom received less than a reasonably equivalent value for the Alleged Preferential Payments.  While the parties present competing arguments on this point, the court is unable to resolve the matter based on the record.  Second, as discussed in connection with Count II, there is a genuine issue of material fact as to whether Ruley is an insider.  Third, there is a genuine issue of material fact as to whether the Alleged Fraudulent Transfers were made in the ordinary course of business.  The Trustee characterizes the Alleged Fraudulent Transfers as exceptional in the context of Hawaiian Telecom, whereas Ruley urges the court to view the Alleged Fraudulent Transfers as part of Hawaiian Telecom's normal business practices.  The determination of whether a payment is made in the ordinary course of business "is a question of fact that depends on the nature of industry practice." In re Peck/Jones Const. Corp., 2010 WL 6245626, at * 6 (B.A.P. 9th Cir. Aug. 26, 2010).  Neither party has provided this

court with evidence as to the industry practice.  The court

denies summary judgment as to Count III.


          **C.   Count IV**

      Count IV seeks to avoid the Alleged Fraudulent

Transfers pursuant to §§ 548(a)(1)(B)(i) and (ii)(I).  Second Am.

Compl. ¶¶ 84-92.  Both Ruley and the Trustee move for summary

judgment as to Count IV.

      Section 548 provides:

> (a)(1)   The trustee may avoid any transfer
> (including any transfer to or for
> the benefit of an insider under an
> employment contract) of an interest
> of the debtor in property, or any
> obligation (including any
> obligation to or for the benefit of
> an insider under an employment
> contract) incurred by the debtor,
> that was made or incurred on or
> within 2 years before the date of
> the filing of the petition, if the
> debtor voluntarily or involuntarily
> –
>
> . . .
>
>   (B)(i)   received less than a reasonably
> equivalent value in exchange for such
> transfer or obligation; and
>
> . . .
>
>   (ii)
>
> . . .
>
>       (I)  was insolvent on the date that such
> transfer was made or such obligation was
> incurred, or became insolvent as a
> result of such transfer or obligation; .
> . . .

11 U.S.C. § 548(a)(1).

As discussed in connection with Count III, there is a genuine issue of material fact as to whether Hawaiian Telecom received less than a reasonably equivalent value for the Alleged Preferential Payments.  Also, as discussed in connection with Count II, there is a question of fact as to whether Hawaiian Telecom was insolvent at the relevant time of the Alleged Preferential Payments.  Because the court cannot resolve these issues from the record, summary judgment is precluded as to Count IV.

### D.   Count VII

Count VII is a "catchall" claim seeking recovery of all Alleged Preferential Payments and all Alleged Fraudulent Transfers.  Given the foregoing genuine issues of material fact, summary judgment on Count VII is denied.

## V.        CONCLUSION.

For the foregoing reasons, the court denies the summary judgment motions filed by both Ruley and the Trustee.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 31, 2013.



  /s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

15

Shultz & Tam (Litigation Trustee) v. Michael S. Ruley, CIV. NO. 12-00702 SOM/BMK;
ORDER DENYING SUMMARY JUDGMENT